## THE CONTINENTAL INSURANCE COMPANY v. SARAH C. DALY, *as Administratrix, &c.*

1. FIRE INSURANCE; *Premium Note; Forfeiture of Policy.* A condition in a fire-insurance policy providing that the failure of the insured to pay a premium note when it falls due. will relieve the insurer from liability from any loss occurring during such default, is not unreasonable, or contrary to public policy; and unless such condition is waived or rescinded by the insurer, the non-payment of the note at the stipulated time involves a forfeiture of the policy.

2. PREMIUM NOTE; *Payment by Party in Interest.* To excuse the non-performance of such a condition, it must appear that performance could not by any means have been accomplished; and where the insured dies before the maturity of the premium note, and payment thereof could have been properly made by some one beneficially interested in the policy and in the performance of its conditions, such person cannot be relieved from the consequences of his default.

3. PREMIUM NOTE, *Unpaid; Policy, Forfeited.* D. took out an insurance policy upon a dwelling house, occupied by himself and family, and other exempt property, insuring against loss by fire and lightning, and in consideration gave a premium note, due December 1st, 1883. It was stipulated in the policy, in substance, that in default of punctual payment, the policy should be forfeited. He died on August 28th, 1883, leaving a widow and children, who continued to occupy and use the insured property. On December 21, 1883, when the premium note was due and unpaid, the property was destroyed by fire. *Held,* That the insured property being exempt, vested in the widow and children of the deceased, and that the interest in the insurance policy devolved upon them; and in case of loss, where there was no default, the insurance money would accrue to them, and would not become assets of the estate of the deceased, nor subject to distribution under any law of the state. As the widow and children were beneficially interested in the contract of insurance, and they alone could be affected by the non-performance of the conditions of the contract, it was their duty to have paid the premium note, and failing in that, they cannot avoid the consequences of non-payment.

### *Error from Bourbon District Court.*

ACTION upon a policy of insurance. On December 14, 1882, *The Continental Insurance Company,* of New York city, insured *J. L. Daly* against loss or damage to a dwelling house, together with the furniture and bedding therein, on account of fire and lightning, in a sum not exceeding seven hundred dollars.

The term of the policy was five years, and the premium thereon was fourteen dollars, which was not paid in cash, but a note was given therefor, due December 1, 1883, and bearing interest at the rate of seven per cent. per annum. The dwelling house was occupied by the insured and his family as a homestead at the time the policy was executed. Among the stipulations stated in the policy was the following:

"If a note is taken for the premium or any part thereof, it shall be accepted as payment thereof only until the maturity of such note, and if the same be not paid at maturity according to its terms, this policy shall be void so long as the same remains unpaid, unless the time of payment has been duly extended by consent of the superintendent of this company in writing; provided, however, that on payment to the company in New York, or to the western department in Chicago, by the assured or assigns of all premiums due under this policy and the note given thereon, the liability of this company on this policy shall again attach and this policy be in force from and after such payment, unless this policy shall be void and inoperative from some other cause. But this company shall not be liable for any loss happening during the continuance of such default of payment; nor shall any such suspension of liability under this policy on account of such default have the effect of extending such liability beyond the period of its termination as originally expressed in writing hereon."

The premium note given by the insured, J. L. Daly, contained the following provision:

"And it is hereby agreed that in case of non-payment of this note at maturity, this company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to this company in New York, or to the western department at Chicago; and in the event of non-settlement for time expired, as per terms in contract, the whole amount of note may be declared earned, due and payable, and may be collected by law. Given in payment for a policy of insurance. If transferred either before or after maturity, by the company, it is agreed this note shall be subject to all defenses as if owned by the company herein named."

On August 28, 1883, J. L. Daly died, and on the 14th day of September following, Sarah C. Daly was duly appointed

administratrix of his estate.　On December 21, 1883, the property insured was totally destroyed by fire.　Soon thereafter a notice of the loss was given to the insurance company, but payment of the insurance money was refused by the company on the ground of the non-payment of the premium note, which was and is wholly unpaid.

On March 13, 1884, Sarah C. Daly, as administratrix of the estate of J. L. Daly, deceased, brought an action in the district court of Bourbon county against the insurance company, to recover the amount of insurance stated in the policy.　The cause was tried without a jury, at the September Term, 1884, and upon an agreed statement of facts the following findings of fact and of law were made by the court:

"1. That J. L. Daly died August 28, 1883, and on September 14, 1883, plaintiff was duly appointed and qualified administratrix of his estate.

"2. The personal property inventoried and subject to payment of debts is $1,182.

"3. No debts have been proved or presented up to this date.

"4. On December 14, 1882, defendant issued to said J. L. Daly the policy of insurance set up in plaintiff's petition.

"5. The only consideration for said policy was a note of $14, executed by said Daly to defendant, dated December 12, 1882, due in one year from the first day of December, 1882, with seven per cent. interest.

"6. Said note contained the following stipulation: 'And it is hereby agreed that in case of non-payment of this note at maturity, this company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to the company in New York, or to the western department at Chicago; and in the event of non-settlement for time expired, as per terms in contract, the whole amount of note may be declared due and payable, and may be collected by law.　Given in payment for a policy of insurance.'

"7. Said note is still wholly unpaid.

"8. The property covered by said policy was destroyed by fire, without fault of the assured, his executors, administrators or heirs, on or about December 21, 1883.

"9. Said property was owned and occupied by said Daly as a residence at the time of his death, and was owned and oc-

cupied by his family (wife and children) as his heirs at the time it was destroyed by fire.

"10. The value of said property destroyed was seven hundred dollars.

"11. On Jan. 8, 1884, this plaintiff notified S. G. Parker, a soliciting agent of this defendant in Bourbon county, Kansas, that the property covered by said policy was wholly destroyed by fire on Dec. 21, 1883, and said Parker notified the defendant on the same day by telegraph of such loss.

"12. On January 11, 1884, the defendant sent a letter to said Parker, which letter was delivered to this plaintiff, and which is as follows: 'Office Western Department Continental Insurance Company of New York, Lakeside Building, corner Clark and Adams streets.—Chicago, Jan. 11, 1884.—S. G. Parker, Fort Scott, Kansas, Dear Sir: Your telegram notifying us that Mr. Daly has lost his dwelling and contents, was duly received. We find that Mr. Daly promised to pay a note of $14, on the 1st of December, 1883, and that he neglected to do so. His failure to keep his agreement in this matter is unfortunate for him, and he of course bears the usual penalty. It is to be regretted that he was not more prompt. Yours truly, A. WILLIAMS, *Supt.*'

"13. No notice of the death of said Daly was given this defendant until after the loss occurred, unless the publication of the notice of such plaintiff's appointment was such notice.

"14. Defendant wrote to J. L. Daly by mail of Nov. 23, 1883, of the time of maturity of said note.

"15. Said letter was duly received at Hepler, Kansas, Dec. 24, 1883.

"16. The heirs-at-law of said Daly are named as follows: Sarah C. Daly, widow; children: Mary E. England, Minnie E. Daly, Edgar C. Daly, Maggie E. Daly, Frederick E. Daly, William C. Daly."

As conclusions of law upon the foregoing facts, the court found:

"1. That said defendant waived proof of loss of the property destroyed.

"2. That plaintiff is entitled to recover from defendant the amount of loss, $700, less amount of the note and interest amounting to $15.70, the sum of $684.30."

Upon these findings judgment was entered against the *Insurance Company,* and the purpose of the proceeding in this court is to reverse that judgment.

*E. M. Hulett*, and *J. D. McCleverty*, for plaintiff in error.
*Bawden & Martin*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: It is agreed that the only consideration for
the insurance policy in suit was the premium note of fourteen
dollars.   In the policy, as well as in the note, it was expressly
stipulated that a non-payment of the premium note at matur-
ity would render the policy void, and that the insurance com-
pany should not be liable for any loss occurring during the
continuance of such default.   The note had been due and un-
paid for twenty days prior to the happening of the fire which
destroyed the property insured, and payment had not been
made at the commencement of this action.   That the provision
prescribing a forfeiture of the policy in case of the failure to
pay the premium note when it became due was reasonable
and just, and a contract the parties were capable of making,
cannot be denied.   The premium is the consideration that in-
duces the insurer to assume the risk; its prompt payment is
essential to the success of the insurance business, and necessary
to enable insurance companies to comply with the contracts
entered into with their patrons.   To promote punctuality in
the payment of premiums, and enable them to meet their en-
gagements, insurance companies usually contract with the as-
sured that a neglect to pay the premium or premium notes
when they fall due, will, if a loss occurs during the default,
operate as a forfeiture of the insurance-money.   In a policy
containing a stipulation of this character, time is material and
of the essence of the contract, and a failure to make payment
at the time therein agreed, where there is no waiver of that
condition of the policy, will absolve the insurance company
from liability. (*Critchett v. American Ins. Co.*, 53 Iowa, 404;
*McIntire v. Michigan State Ins. Co.*, 17 N. W. Rep. 781;
*Shake v. Hawkeye Ins. Co.*, 44 Iowa, 540; *Garlick v. Missis-
sippi Valley Ins. Co.*, 44 id. 553; *Greeley v. Iowa City Ins. Co.*,
50 id. 80; *Williams v. Albany City Ins. Co.*, 19 Mich. 451;

*New York Life Ins. Co. v. Statham, et al.,* 93 U. S. 24;
*Wheeler v. Connecticut Mutual Life Ins. Co.,* 82 N. Y. 543;
*Klein v. Ins. Co.,* 104 U. S. 88.)

The counsel for defendant in error are not, as we understand them, opposed to the validity or justness of such a contract, but they insist that there was no default; that the assured was not negligent, but that by the act of God it was rendered impossible for the insured to comply with his contract. They argue that the neglect was on the part of the insurance company in failing to present and prove up the premium note as a demand against the estate of J. L. Daly, deceased, which made it impossible for the administratrix, or anyone interested in the insurance policy, to pay the note. The claim is, that under our statutes no demand against any estate can be allowed or paid until the claimant first makes oath in open court, or files an affidavit with such demand, of its validity and justness; and that the insurance company having failed in this respect, the administratrix of the estate was absolutely prohibited from paying the premium note. This, then, is the excuse given for non-payment. We must briefly inquire of its sufficiency. It will be noted that the payment of the premium upon this policy was a condition, the performance of which was necessary to the continued liability of the insurance company. Under the rule invoked by counsel for defendant in error, it must appear that the thing to be done, or the condition to be performed, could not by any means have been accomplished, either by the insured or by any other person for him. As a general rule, where a person expressly contracts to do an act lawful and possible at the time, an inevitable accident or other unforeseen contingency not within his control, will not discharge him from the obligation of his contract, or relieve him or those claiming through him from the performance of its conditions, because such accident or contingency might have been provided against in the contract. If the payment of the premium note could have been properly made by the administratrix, or by some one beneficially interested in the policy and in the performance of its conditions, such persons at least cannot be relieved

from the consequences of a default. (*Beebe v. Johnson,* 19 Wend. 500; *Wheeler v. Connecticut Mutual Life Ins. Co.,* 82 N. Y. 543; *Evans v. United States Life Ins. Co.,* 64 id. 305; *Roehner v. Knickerbocker Life Ins. Co.,* 63 id. 150.)

Was the performance of the condition an impossibility in this case? We think not. The duty of paying the premium note did not devolve upon the administratrix, but for reasons other than those stated by her counsel. The plaintiff below, in her character as administratrix, had no interest in the insurance-money, nor control over it. If it had been recovered it would not have been assets of the estate subject to the claims of creditors, nor to distribution under any law of the state. The property insured was exempt to the widow and children of the deceased; the dwelling house was occupied as a residence by Daly and his family at the time the policy was issued and until his death in August, 1883, and continued to be occupied by his widow and children after his death until the occurrence of the fire, on December 21, 1883. By the provisions of our statute—

"A homestead . . . occupied by the intestate and his family, at the time of his death, as a residence, and continued to be so occupied by his widow and children, after his death, together with all the improvements on the same, shall be wholly exempt from distribution under any of the laws of this state, and from the payment of the debts of the intestate, but shall be the absolute property of the said widow and children." (Comp. Laws 1879, ch. 33, § 2.)

It is also provided that—

"In addition to her portion of her deceased husband's estate, the widow shall be allowed to keep absolutely for the use of herself and children of the deceased, all personal property of the deceased which was exempt to him from sale and execution at the time of his death." (Comp. Laws 1879, ch. 37, § 49.)

As before stated, all of the property embraced in the policy in question was exempt. Within the policy of our laws upon the question of exemptions, and the liberal interpretation given them, we think the insurance-money paid as compensation for the loss of exempt property stands in place of that property.

The policy in question contained a clause providing that the insurance company had the option, in case of a destruction of the property by fire or lightning, to rebuild and replace it. If it was so replaced, the widow and children would be entitled to enter upon its occupancy and hold it as a homestead exempt from the claims of any of the creditors of the deceased. But in case the company fails to exercise the option of rebuilding the property, it would seem that for a reasonable time at least, the money paid as compensation for the loss of such exempt property would also be exempt. (*Mitchell v. Milhoan*, 11 Kas. 617; *Houghton v. Lee*, 50 Cal. 101; *Probst & Hild v. Scott*, 31 Ark. 652; *Cooney v. Cooney*, 65 Barb. 524; *Strouse's Executor v. Becker*, 44 Pa. St. 206; Thompson on Homesteads and Exemptions, §§ 750, 734.)

Here, however, the property insured, upon the death of J. L. Daly descended to his widow and children, and absolutely vested in them and was subject to their disposition. And as we have seen that the insurance-money paid for the loss of their property would also vest in them, it follows that they alone were interested in the contract of insurance, and they alone could be affected by a failure to perform the condition of the contract. If they desired to avail themselves of the benefits of the policy, it was their duty, and not that of the administratrix, to have kept it alive and to comply with the conditions of the policy to be performed by the insured. There was no obstacle to prevent them from complying with this condition; and within the rule heretofore stated, they cannot avoid the consequences of their default.

The question raised by counsel for defendant in error, that payment of the premium note could not be made by the administratrix because of the failure of the insurance company to present and prove up the note as a demand against the estate, is therefore not in the case.

In view of the conclusions we have reached, the other question raised by plaintiff in error, as to who was the proper party to sue to recover upon the policy, becomes of no importance. It follows from what has been said, that the action might have

been brought by the widow and children, as they were bene-
ficially interested in the policy. As the contract of insurance
was made with J. L. Daly, his executors, administrators and
assigns, it is claimed that the administratrix alone can sue.
If suit can be maintained at all by the administratrix, it can
only be as trustee of the widow and children of the deceased,
who were alone interested in the fund sued for, (Civil Code,
§ 28;) but whether it can be brought in the name of the ad-
ministratrix, we need not and do not now decide.

The judgment of the district court will be reversed.

All the Justices concurring.