EMMA L. HIGGINS, APPELLEE, v. OLD LINE INSURANCE COMPANY, APPELLANT.

FILED JANUARY 8, 1932. No. 28016.

*King & Haggart,* for appellant.

*McElfresh & Walker, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This is an action to recover upon a life insurance policy. The insurance company appeals from a judgment in favor of the beneficiary.

The company insured the life of the son of the beneficiary and received the premiums for the first and second year and the first semiannual of the third year. The policy provides that it shall lapse, unless the premium is paid when due or within a 31-day grace period. The semiannual premium in this case was due February 2. It was not paid when due, but during the 31-day grace period the insured sent the company $10. The letter of the company acknowledging receipt of this remittance shows the application made thereof:

"Lincoln, Nebraska, March 3, 1930.

"Carl P. Higgins,

"Schuyler, Nebr.

"Dear Mr. Higgins:

"We are in receipt of your remittance in the sum of $10 to be applied as part payment on the semiannual premium on your policy No. 28718. The same has been given proper credit.

"We wish to advise, Mr. Higgins, inasmuch as our records must show a premium paid in full in some manner we are inclosing herewith a note for the balance of the premium payable March 18, 1930, and when the same with your signature is received we will issue premium receipt.

"Thanking you for your remittance and with kind wishes, we remain,

"Very truly yours,
"The Old Line Insurance Company,
"By E. McCormick,
"Ass't Cashier."

The note referred to was nonnegotiable and provided for forfeiture of the policy if not paid when due, in which case the note was canceled and ceased to be an obligation of the insured. The insured did not sign and return this note immediately, but on March 15 the company wrote to him again about the matter. It retained the $10 and made no other statement regarding the payment or the purpose of the note. Upon March 24, or 8 days after the maturity of the note, the insured changed the due date from March 18 to April 18 and returned it to the company. It was accepted and retained by the company.

On April 18 the insured remitted $10, which was applied on the indebtedness. No new extension agreement was executed, but a letter states that the time for payment of the balance was extended 30 days. At this time a line was drawn through the due date (4-18-30) of the note and extension agreement and 5-18-30 written in pencil thereon. The policy had no loan or cash surrender value, but upon the payment of the balance of $8.72 it would have had such a value of $44. On May 21 the company notified the insured that the policy had lapsed for having failed to pay the note. The insured died June 23.

If the semiannual premium due February 2, under the terms of the policy, had not been paid within 31 days thereafter, the policy, according to its terms, would have been lapsed. *Novak v. LaFayette Life Ins. Co.*, 106 Neb. 417. However, the insurance company did not see fit to forfeit this policy. The insured sent in a partial payment. It was accepted and retained by the company. Later, after the expiration of the 31 days of grace provided by the contract and the statutes of Nebraska, it sent him for execution a nonnegotiable note with a forfeiture provision in case said

note was not paid when due, so that its records might "show a premium paid in full in some manner." This note was not executed and returned to the company until March 24, or 21 days after the expiration of the grace period. This first remittance, according to the letter quoted above, was "Applied as part payment on the semiannual premium on your policy No. 28718. The same has been given proper credit." This language, together with the action of the company in retaining the premium, is incapable of any meaning except that the remittance was received as a part payment on the premium. In fact, the suggestion that the extension was only for their records was a waiver of the strict forfeiture provision, which was an inducement to sign said note. This was followed by a second remittance of $10, leaving a balance of $8.72 on the semiannual premium. No new extension agreement was executed. According to the strict terms of the extension note signed, the policy might have been lapsed, but the company again accepted a partial payment and did not demand a forfeiture. This letter acknowledges this second remittance:

"April 24, 1930.

"Carl P. Higgins,
"Schuyler, Nebr.
"Dear Mr. Higgins:

"We wish to thank you for your remittance of $10 representing part payment of note and interest on your policy No. 28718. The same has been given proper credit and for your convenience we are today extending the balance for a period of thirty days.

"Very truly yours,
"The Old Line Insurance Company,
"By ———————,
"Ass't Cashier."

At this time the due date was changed on the policy from April 18 to May 18. When the balance of $8.72 was not paid on May 18, the company attempted to forfeit the policy under the provisions of the extension agreement. "Forfeitures are looked upon by the courts with ill favor,

and will be enforced only when the strict letter of the contract requires it; and this rule applies with full force to policies of insurance." *Connecticut Fire Ins. Co. v. Jeary,* 60 Neb. 338; *Haas v. Mutual Life Ins. Co.,* 84 Neb. 682. "A stipulation for the forfeiture of an insurance policy is waived by conduct of the insurer inconsistent with his right or intention to claim such forfeiture." *Jensen v. Palatine Ins. Co.,* 81 Neb. 523. See *Knoebel v. North American Accident Ins. Co.,* 135 Wis. 424. In this case the company waived by its conduct, which was inconsistent with its right to enforce such forfeiture, by accepting and retaining partial payments of the premium. It was a waiver of payments according to the contract. A provision that a policy shall be forfeited if a premium note is not paid on maturity is for the benefit of the company, and may be waived by the insurer. *Phenix Ins. Co. v. Rollins,* 44 Neb. 745. By waiving the provisions as to the time of payment and the retention of the portion of the premium, the company extended the insurance for the *pro rata* period represented by the amount of the payment. This extended the insurance in force until June 8.

The company urges that the insured was not entitled to any grace period after the due date of the semiannual premium, which was February 2. They discuss the language of the contract and contend that, under its terms, that was the due date. Section 44-602, Comp. St. 1929, provides: "No policy * * * shall be issued * * * in this state unless it contains in substance the following provisions: * * * 2. A provision that the insured is entitled to a grace of one month within which the payment of any premium after the first year may be made." Section 44-608, Comp. St. 1929, says: "A policy issued in violation of this article shall be held valid, but shall be construed as provided herein, and when any provision in such a policy is in conflict with any provision hereof, the rights, duties and obligations of the company, policy holder and the beneficiary shall be governed by the provisions of this article." The construction recommended by the company

would be in violation of the statute. The premium, having been accepted in partial payments and the forfeiture provisions waived, was paid until June 8. At that time there was due $8.72, which the statute gave the insured a grace period of a month to pay. The policy was therefore in force on June 23, the date the insured died.

The court does not pass upon the question as to the allowance of a grace period after the due date of an extension note. The judgment of the trial court is

AFFIRMED.